IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:10-CV-228 |
| THREE THOUSAND, FIVE HUNDRED, TWENTY-SEVEN (3,527) FIREARMS, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil forfeiture action is before the court on the "Motion to Dismiss" [doc. 16] filed by the claimant, TG International, Inc. ("TGI"). The plaintiff, United States of America ("U.S." or "government"), has filed a response [doc. 24], and TGI has submitted a reply [doc. 29]. This is an *in rem* action for the forfeiture of 3,527 firearms. For the reasons that follow, the motion will be denied.

I.

*Background*

According to the complaint and accompanying affidavits of two special agents,[1] TGI is a firearms licensee that has location in Louisville, Tennessee and a

---

[1] In support of the complaint is the affidavit of Forest G. Webb, Special Agent with Alcohol, Tobacco, Firearms, and Explosives, and the affidavit of Theodore S. Francisco, Special Agent with
(continued...)

manufacturing location in Alcoa, Tennessee. During an inspection of the Louisville location on October 23, 2009, Alcohol, Tobacco, Firearms and Explosives ("ATF") investigators observed machinegun barrels imported from Hungary, which TGI appeared to be assembling into firearms for commercial sale. ATF obtained search warrants that were executed on November 25, 2009, and November 27, 2009, at the Louisville location. During the search, ATF seized documents, rifles, and machinegun barrels. Execution of the November 25 search warrant revealed TGI's manufacturing location in Alcoa, and on December 1, 2009, ATF executed a search warrant at that location where ATF seized rifles and machineguns.

Via certified mail, ATF notified the president of TGI, Charles Jones, that the rifles and parts kits had been seized. TGI submitted 14 Seized Asset Claim Forms, which ATF received between February 16, 2010, and February 19, 2010. This civil forfeiture action was filed on May 17, 2010.

The complaint and affidavits allege an elaborate scheme that they contend TGI engaged in to circumvent the laws concerning the importation of firearms and their component parts, including barrels. As a result, the government alleges that the seized property is subject to forfeiture on several statutory bases.

---

[1](...continued)
the Department of Homeland Security, United States Immigration and Customs Enforcement.

II.

*Analysis*

**Subject Matter Jurisdiction**

TGI contends that the notices sent by the government were not timely and facially deficient. TGI argues that this court lacks subject matter jurisdiction because the U.S. failed to provide proper notice pursuant to 18 U.S.C. § 983(a)(1). Section 983(a)(1) provides in pertinent part:

> (1)(A)(i) Except as provided in clauses (ii) through (v), in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than 60 days after the date of the seizure.
>
> . . .
>
> (F) If the Government does not send notice of a seizure of property in accordance with subparagraph (A) to the person from whom the property was seized, and no extension of time is granted, the Government shall return the property to that person without prejudice to the right of the Government to commence a forfeiture proceeding at a later time. The Government shall not be required to return contraband or other property that the person from whom the property was seized may not legally possess.

18 U.S.C. § 983(a)(1)(A)(i) and (F).

TGI argues that because notice was not properly given the government was required to return the seized property after 60 days; thus, the warrant for arrest was void and this court lacks jurisdiction. The court disagrees. Failure to comply with the 60-day notice

3

requirement does not deprive the court of jurisdiction nor warrant dismissal of the case.

> Though the remedy for failing to provide timely notice is the return of the property seized, the statute also permits the Government to commence a judicial forfeiture proceeding at a later time. That time has come, as the Government filed its civil judicial forfeiture action . . . . Filing a complaint for civil forfeiture allows the Government to seize the property subject to forfeiture. Release of the seized [property] to Claimants would therefore be academic. The Government's properly-filed civil forfeiture action would allow it to immediately re-seize the property.
>
> Section 983(a)(1)(F) does not clearly state whether the Government may commence a forfeiture proceeding after having failed to provide timely notice without first returning the property seized. *The prevailing view among several district courts is that inadequate notice does not prohibit the Government from bringing a forfeiture proceeding at any time, regardless of whether the property has been returned*.

*Return of Seized Property v. United States*, 625 F. Supp.2d 949, 954 (C.D. Cal. 2009) (emphasis added and citations omitted). Section 983(a)(1)(F) does not provide that return of the property is a prerequisite to proceeding with a forfeiture action; rather it states that a return of the property will not prejudice a later-filed forfeiture action. *Manjarrez v. United States*, Nos. 01 C 7530, 01 C 9495, 2002 WL 31870533, at *1 (N.D. Ill. Dec. 19, 2002) ("Saying that returning the property does not prevent the later filing of a forfeiture action is very different from saying that returning the property is a jurisdictional prerequisite to the later filing of a forfeiture action. Had Congress intended to bar a forfeiture action in the event the government should fail to return the property, we believe it would have done so explicitly."); *see also Salmo v. United States*, No. 06-12909, 2006 WL 2975503, at *3 (E.D.

4

Mich. Oct. 17, 2006) ("without prejudice" language in § 983(a)(1)(F) "makes it abundantly clear that inadequate notice does not immunize property from forfeiture"); *United States v. $11,500.00 in U.S. Currency*, 797 F.Supp.2d 1092, 1100 (D. Or. 2011) ("It is uncontested that the government failed to provide actual notice to Claimant Guerrero within 60 days. Despite this deficiency, ... because the government timely initiated a judicial forfeiture proceeding, return of the property at this stage is not warranted."); *United States v. $114,031.00 in U.S. Currency*, No. 06-21820-CIV, 2007 WL 2904154, (S.D. Fla. Oct. 4, 2007) (inadequate notice under § 983 does not prohibit government's bringing forfeiture proceeding at any time, whether or not the property has been returned).

A case also on point is *United States v. $448,163.10 in U.S. Currency*, No. 3:06CV555 (EBB), 2007 WL 4178508 (D. Conn. Nov. 20, 2007). In this civil forfeiture case, the district court was faced with a motion to dismiss for lack of jurisdiction over the *res*. The claimant argued a lack of jurisdiction based on the government's failure to meet the 60-day notice requirement of § 983(a)(1)(A)(i) and its failure to return the seized property prior to initiating the judicial forfeiture action. The district court initially found that a dismissal of the action was not a proper remedy for the failure to meet the notice requirement. The court stated, "The 60-day notice requirement applies only to administrative nonjudicial civil forfeiture proceedings; judicial civil forfeiture proceedings are governed by another set of notice requirements." *Id*. at *2 (citing 18 U.S.C. §§ 983(a)(1)(3),(4)). The district court, relying on opinions from several other courts, then declined to adopt the

5

claimant's jurisdictional argument that the seized property had to be returned before civil forfeiture proceedings could be commenced. *Id*. at *2-3 (cases cited therein). Finally, the court observed that "[a]n interpretation of § 983(a)(1)(F) as allowing a civil judicial forfeiture action to proceed despite inadequate notice of administrative forfeiture is consistent with the manner in which courts have traditionally treated procedurally invalid administrative forfeitures." *Id*. at *3. "[T]he remedy for inadequate notice of administrative forfeiture is to either 'set aside the declaration of forfeiture and order the [government] to return the money ... or to begin judicial forfeiture in the district court.'" *Id*. (citing *United States v. Giraldo*, 45 F.3d 509, 512 (1st Cir. 1995). For all of these reasons, the court concluded that it did not lack jurisdiction over the civil forfeiture action.

TGI also argues that the notice is facially deficient because it does not state the provisions of law alleged to have been violated or specific acts or omissions that are the basis of the alleged violations.[2] Therefore, it is argued that the court lacks subject matter jurisdiction and the notices do not comply with due process. The court does not agree.

TGI's deficient content argument is rejected for the reasons just discussed concerning inadequate notice based on timing. The inadequate notice does not prevent the government from bringing a forfeiture proceeding nor does it deny this court jurisdiction. *$114,031.00 in U.S. Currency*, 2007 WL 2904154 at *3; *$448,163.10 in U.S. Currency*, 2007

---

[2] Attached to the response of TGI is the affidavit of Charles Jones, president of TGI, in which he states these deficiencies in the notice letter. The affidavit is unsigned and unexecuted and will not be considered by the court. The response also refers to an "attached sample notice letter," which is not attached.

6

WL 4178508, at *2-3. In addition, inadequate notices should be treated as voidable with the proper remedy being to permit the claimant the right to judicially contest the forfeiture. *United States v. Dusenbery*, 201 F.3d 763, 768 (6th Cir. 2000) (due process violation occurred in administrative forfeiture because of insufficient notice and statute of limitations had run on judicial forfeiture action, but proper remedy was to give petitioner hearing on merits). Further, TGI has not shown how it was prejudiced or denied due process by the deficiency in the administrative notice. TGI received actual notice in this case and has an opportunity to be heard and defend its claim. *Cf. $11,500.00 in U.S. Currency*, 797 F.Supp.2d at 1100 ("Moreover, claimant has made no showing that his ability to defend against the seizure was prejudiced, or that he was otherwise denied due process as a result of the delay in his receipt of actual notice of the seizure for forfeiture.").

Based on the authority cited and discussed above, this court finds that it has subject matter jurisdiction over the seized property in this forfeiture action. Any failure by the government to meet notice requirements or to return the seized property prior to initiating this action does not require dismissal of this case.

**Failure to State a Claim**

TGI also argues that this action should be dismissed for failure to state a claim "pursuant to Rule 12(b)(6)." The standard applicable to complaints in civil forfeiture cases is governed by the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims ("Supplemental Rules"). *See United States v. Mask of Ka-Nefer-Nefer*, No.

7

4:11CV504 HEA, 2012 WL 1094658 (E.D. Mo. Mar. 31, 2012). Supplemental Rule G(2)(f) requires that the government "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." *Id*. A verified complaint must "assert specific facts supporting an inference that the property is subject to forfeiture." *United States v. $22,173.00 in U.S. Currency*, 716 F.Supp.2d 245, 248 (S.D.N.Y. 2010) (citations omitted); *see also Mask of Ka*, 2012 WL 1094658, at *1.

> However, the Government is not required to allege in the complaint all of the facts and evidence at its disposal. It is sufficient for the Government to simply plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation.

*Id*.

The Federal Rules of Civil Procedure apply to civil forfeiture cases as long as they are not "inconsistent with" the Supplemental Rules. Fed.R.Civ.P.Supp.R.A(2); *see also United States v. $40,000.00 in U.S. Currency*, No. 1:09cv383, 2010 WL 2330353, at *2 (W.D.N.C. May 11, 2010). "The pleading requirements provided by the Supplemental Rules have traditionally been considered more stringent than the general pleading requirements ... [,] an implicit accommodation to the drastic nature of the civil forfeiture remedy." *$22,173.00 in U.S. Currency*, 716 F.Supp.2d at 249 (internal quotation marks and citation omitted). Two recent Supreme Court decisions, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), altered the pleading standards. "Post *Twombley*, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts in its complaint that 'raise a right to relief above the speculative level.'" *$40,000.00 in U.S.*

8

*Currency*, 2010 WL 2330353, at *1 (citing *Twombly*, 550 U.S. at 555); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) ("The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.") (emphasis in original) (citing *Twombly*, 550 U.S. at 555). In *Iqbal*, the Supreme Court explained that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). The change in standard announced in these cases, however, arguably does not have an impact on the analysis in civil forfeiture cases.

> Because [*Twombly* and *Iqbal*] were based on an interpretation of Federal Rule of Civil Procedure 8(a), and the Supplemental Rules expressly state that Supplemental Rule G(2) governs the sufficiency of civil forfeiture complaints, these decisions do not require any alteration to the pleading standards applied to civil forfeiture actions. However, to the extent these decisions and their progeny do not conflict with the Supplemental Rules, they may help to clarify when a civil forfeiture complaint survives the motion to dismiss phase.

*$22,173.00 in U.S. Currency*, 716 F.Supp.2d at 249 (footnotes omitted); *see also $40,000.00 in U.S. Currency*, 2010 WL 2330353, at *2-3.

TGI contends that the complaint fails to state a claim for violation of 18 U.S.C. § 925(d)(3) because, according to its interpretation, the statutory provision only prohibits the importation of completely assembled non-sporting firearms and not the component parts, such as the barrel, of firearms prohibited by § 925(d)(3). Relying on legislative history, TGI also contends that the provision only applies to handgun barrels. The court disagrees.

9

Section 925(d)(3) provides that the Attorney General "shall authorize" the importation of a firearm if it is:

> of a type that does not fall within the definition of a firearm as defined in section 5845(a) of the Internal Revenue Code of 1986 and is generally recognized as particularly suitable for or readily adaptable to sporting purposes, excluding surplus military firearms, except in any case where the Attorney General has not authorized the importation of the firearms pursuant to this paragraph, it shall be unlawful to import any frame, receiver, or barrel of such firearm which would be prohibited if assembled.

In *Firearms Import/Export Roundtable Trade Group v. Jones*, - - - F.Supp.2d - - - -, No. Civil Action 11-547(BJR), 2012 WL 1288476 (D.D.C. Mar. 12, 2012), the district court dealt in part with the denial of plaintiffs' applications to import firearms barrels and in so doing addressed the scope and interpretation of § 925(d)(3). The district court noted that § 925(d) establishes four categories of firearms excepted from the general prohibition on firearm imports. *Id*. at *1. The court then stated the following regarding § 925(d)(3):

> [S]ection 925(d)(3) restricts the importation of the component parts of non-importable firearms, including firearm barrels. In relevant part, it provides that "in any case where the Attorney General has not authorized the importation of the firearms pursuant to this paragraph, it shall be unlawful to import any frame, receiver, or barrel of such firearm which would be prohibited if assembled." Congress added this provision to section 925(d)(3) in 1986 when it passed the Firearms Owners' Protection Act ("FOPA"). In effect, the FOPA amendment prevents an importer from circumventing the import restrictions on assembled firearms by disassembling a firearm into its component pieces for import and subsequent reassembly.

*Id*.

10

Case 3:10-cv-00228   Document 30   Filed 06/19/12   Page 10 of 18   PageID #: 235

In analyzing the issue of whether § 925(d)(3) prohibits a repair and replacement exception, the district court in *Jones* looked at the text of the provision and found it unambiguous. The court focused on the plain meaning of the component parts language — "i.e. the exception for 'any case' where the Attorney General has not authorized the importation of firearms." *Id*. at *9. In looking at the use of the word "any" in the provision, the court observed that "[i]n a series of cases, the Supreme Court has drawn upon the word 'any' to give the word it modifies an expansive meaning when there is no reason to contravene the clause's obvious meaning. It is usually understood to be all inclusive." *Id*. (internal quotation marks and citations omitted). The district court concluded:

> Applying this basic meaning to section 925(d)(3)'s text, the Court finds that the prohibition is expansive: "in *any* case where the Attorney General has not authorized importation of the firearm pursuant to this paragraph, it shall be unlawful to import any frame, receiver, or barrel of such firearm which would be prohibited if assembled." In effect, if the Attorney General has not authorized importation of a sporting purpose firearm, it is "unlawful to import any frame, receiver or barrel of such firearm which would be prohibited if assembled."

*Id*. Based on the broad statutory limitation on firearm component parts, the district court concluded that the ATF could not grant an importation exception for repair and replacement firearms parts. *Id*. at *10.

The same analysis applies in this case. Thus, TGI's contention that § 925(d)(3) does not prohibit the importation of the barrels named in the complaint is without merit.

TGI also argues that based upon the legislative history § 925(d)(3) only applies to handguns. TGI relies on a selective portion of the legislative history that does not state the

11

entire purpose of the legislation.

> The clear intent of Section 925(d)(3) was to "curb the flow of surplus military and other firearms being brought into the United States which are not particularly suitable for target shooting or hunting." 1968 U.S. Code Cong. & Admin. News 2112, 2167. As Senator William Dodd, sponsor of the legislation, emphasized, Title IV prohibits importation of arms which the Secretary determines are not suitable for research, sport, or as museum pieces .... The entire intent of the importation section is to get at those kinds of weapons that are used by criminals and that have no sporting purpose. 114 Cong.Rec. S 5556 Col. 3, S 5582 Col. 1, S 5585 Col. 2 (May 14, 1968) (statement of Senator Dodd).

*Gilbert Equip. Co., Inc. v. Higgins*, 709 F.Supp. 1071, 1082 (S.D. Ala. 1989). At the time the law was being formulated, "the thrust of the legislation was to keep Saturday Night Specials and other cheaply made revolvers out of the United States." *Id*. at n.5. However, "[t]he plain language of section 925(d)(3) makes no distinction between handguns and semiautomatic rifles. Moreover, plaintiff cites no legislative history showing that Congress intended to limit section 925(d)(3) to handguns." *Mullenix v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 5:07-CV-154-D, 2008 WL 2620175, at *3 (E.D.N.C. July 2, 2008) (plaintiff contended § 925(d)(3) concerned only handguns, arguing through legislative history that with the legislation Congress intended only to address the handgun problem). The legislative language TGI relies on does not demonstrate that Congress intended to restrict this section exclusively to handguns. The statute contains broad language, not language that restricts its application to handguns.

12

TGI's argument, based specifically on 27 C.F.R. § 478.112(b)(1)(vii)(F), that the regulations are limited to handgun barrels and thus they support its handgun application argument is also misplaced.

> Plaintiffs' statement that section 478.112 "generally provide[s] for the importation of firearm barrels and only prohibits[s] the importation of certain types of handgun barrels" is false. To the contrary, the regulation establishes a blanket *prohibition* on importation, subject to ATF Director discretion. . . . [T]he subsection that plaintiffs cite – 27 C.F.R. § 478.112(b)(1)(vii)(F) – merely itemizes information that prospective importers must list in their permit application: "If [the application is for importation of] a firearm barrel for a handgun, [importers must include in the application] an explanation why the handgun is generally recognized as particularly suitable for or readily adaptable to sporting purposes." Under no plausible construal of this language does this provision *authorize* barrel importation.

*Jones*, 2012 WL 1288476 at *13 n.18. There is no merit to TGI's argument concerning section 27 C.F.R. § 478.112(b)(1)(vii)(F), and therefore, the court will not address its argument that the government's interpretation is amending the regulation without notice.

TGI also contends that the complaint does not allege that the firearms were surplus military firearms because there is no allegation that the firearms were issued to any military force. Paragraph 15(6)(d) of the complaint refers to imported surplus military or non-sporting barrels. Both of the affidavits submitted in support of the verified complaint also reference "surplus military" in relation to the seized property. The government has pled "enough facts for the claimant to understand the theory of forfeiture."

Accordingly, for the reasons discussed, the government has sufficiently stated a claim for forfeiture based on § 925(d)(3). TGI's motion will be denied on that basis.

13

### Alleged Violation of 22 U.S.C. § 2778(c)

TGI next argues that the seized barrels were not imported in violation of 22 U.S.C. § 2778(c). Section 2778(c) provides in pertinent part:

> Any person who willfully . . . in a registration or license application or required report, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined for each violation not more than $1,000,000 or imprisoned not more than 20 years, or both.

The government alleges in the verified complaint that TGI violated § 2778 because it "submitted ATF Forms 6 that failed to identify the imported barrels and parts or components of automatic firearms, that failed to disclose the non-sporting or surplus machinegun barrels were manufactured in Hungary or Bulgaria, and failed to identify the original manufacturers of the barrels." Therefore, they are subject to forfeiture.

TGI argues that the regulation that implements the license application requirement, 27 C.F.R. § 447.42(a)(1), with respect to barrels only requires that the length of the barrel be provided. It does not require disclosure of where the barrels were manufactured or the identity of the original manufacturers of the barrels. Thus, TGI concludes that the property is not merchandise knowingly brought into the United States contrary to law, so it is not subject to forfeiture.

The U.S. Munitions List, 27 C.F.R. § 447.21, identifies defense articles subject to controls under that part of the regulations. Category I(b) Firearms are identified as "Automatic firearms and all components and parts for such firearms to caliber .50 inclusive."

14

Section 447.11 defines "defense articles" to include "Any item designated in § 447.21 or § 447.22." Thus, any item listed in § 447.21 is a defense article, which includes "all components and parts" of firearms. Section 447.41(a) states, "Articles on the U.S. Munitions Import List will not be imported into the United States except pursuant to a permit under this subpart." Section 447.41(c) states in part, "A permit is not required for the importation – (2) Minor components and parts for Category (a) and (b) firearms, *except barrels*, cylinders, receivers (frames) or complete breech mechanisms, when the total value does not exceed $100 wholesale in any single transaction." (emphasis added). Barrels are thus excepted from the no permit requirement for minor component parts. In addition, the definition of firearm in § 447.11 includes "all components and parts therefor." Plus, section 925(d)(3) sets out barrels from frames and receivers in its language. The firearm barrels are subject to all of the information required in the application for a permit, a Form 6.

The regulation section that sets out the essential information for a permit application, 27 C.F.R. § 447.42, requires *inter alia* the identity of the country from which the defense article is imported. § 447.42(a)(1)(ii). The name and address of the foreign seller and foreign shipper must be included, § 447.42(a)(1)(iii), as well as a description of the defense article being imported, including "the length of the barrel." § 447.42(a)(1)(iv)(E). Also required are the name and address of the manufacturer. § 447.42(a)(1)(iv)(A).

The government has sufficiently alleged in the complaint and the supporting affidavits that TGI did not provide the required information on the application form. Thus, the government has stated a claim that the property consists of items imported into the United

15

Case 3:10-cv-00228   Document 30   Filed 06/19/12   Page 15 of 18   PageID #: 240

States in violation of 22 U.S.C. § 2778(c) and therefore constitutes merchandise subject to forfeiture.

**Alleged Forfeiture Under 19 U.S.C. § 1595(c)**

The government also alleges in the complaint that the property is subject to forfeiture under 19 U.S.C. § 1595a(c). TGI argues that the government has not stated a claim for such a forfeiture. Section § 1595a(c) provides in relevant part:

> Merchandise which is introduced or attempted to be introduced into the United States contrary to law shall be treated as follows:
>
> (1)   The merchandise shall be seized and forfeited if it - -
>        (A) is stolen, smuggled, or clandestinely imported or introduced;
> . . .
>
> (2)   The merchandise may be seized and forfeited if - -
> . . .
>        (B) its importation or entry requires a license, permit or other authorization of an agency of the United States Government and the merchandise is not accompanied by such license, permit, or authorization.

TGI argues that the complaint does not identify the particular law contrary to which the firearms were introduced into the United States. It also contends that the complaint does not allege that the property was "stolen, smuggled, or clandestinely imported or introduced" as required by the statute. Finally, with regard to § 1595a(c)(2)(B), TGI argues that the complaint does not allege the firearms were not "accompanied" by a required license, permit, or authorization."

16

"The phrase 'contrary to law' under § 1595a refers to how merchandise . . . is introduced in the United States illegally, unlawfully, or in a manner conflicting with *established law*." *Mask of Ka*, 2012 WL 1094658, at *3 (emphasis in original); *see also United States v. Davis*, 648 F.3d 84, 89 (2nd Cir. 2011) ("The phrase 'contrary to law' means 'illegal; unlawful; conflicting with established law.'").[3] "[T]he phrase 'clandestinely introduces' [refers] to any method of introducing goods into this country surreptitiously by concealment or fraud." *United States v. Kurfess*, 426 F.2d 1017, 1019 (7th Cir. 1970). In addition, the term "clandestine" is defined as, "Secret or concealed, especially for illegal or unauthorized purposes." *Black's Law Dictionary* 242 (7th ed. 1999).

Viewing the complaint and accompanying affidavits as a whole, the government has sufficiently stated a claim pursuant to § 1595a(c)(1)(A). The complaint and affidavits allege sufficient facts to state a claim that TGI "clandestinely" imported firearms and the frame, receiver, or barrel of such firearms that would be prohibited and in violation of 18 U.S.C. § 925(d)(3), or "contrary to law."

With regard to paragraph (c)(1)(B), the government argues that by concealing the true nature of the parts kits, TGI failed to obtain a license or permit as required by § 925(d)(3) and 22 U.S.C. § 2778(c). TGI simply cites to a paragraph in the complaint that

---

[3] In light of the context of 19 U.S.C. § 1595a(c), "it can be argued that some nexus between international commerce – the subject of the customs regulations found in Title 19 – and the law violated is necessary to trigger Section 1595a's remedies." *Davis*, 648 F.3d at 90. Since this case involves "foreign commerce" that has "crossed a State or United States boundary," that nexus has arguably been met. *Id*.

17

lists the deficiencies in the required documents.  Again, the complaint as whole and the affidavits accompanying the complaint allege sufficient facts to state a claim under § 1595a(c)(1)(B).

III.

*Conclusion*

Accordingly, for the reasons stated herein, TGI's motion to dismiss will be denied.  An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan<br>United States District Judge